IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ROSEMARY SIRING**, | Case No. 3: 11-cv-1407-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **OREGON STATE BOARD OF HIGHER EDUCATION**, acting by and through **EASTERN OREGON UNIVERSITY**, a public educational institution of higher learning, | |
| Defendant. | |

Craig A. Crispin and Shelley D. Russell, Crispin Employment Lawyers, 1834 Southwest 58th Avenue, Suite 200, Portland, Oregon 97221. Attorneys for Plaintiff.

Michael Porter and Cody J. Elliott, Miller Nash LLP, 3400 U.S. Bancorp Tower, 111 Southwest Fifth Avenue, Portland, Oregon 97204. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In this lawsuit alleging employment discrimination based on age and disability, Defendant Oregon State Board of Higher Education moves to exclude the expert report and testimony of Jean Stockard, Ph.D., Plaintiff's expert relating to the tenure-track review, evaluation, and termination processes and procedures in the Oregon University System and the

PAGE 1 – OPINION AND ORDER

process and procedure used in Defendant's decision to deny tenure to Plaintiff and terminate her employment. Dkt. 56. For the following reasons, Defendant's motion is granted in part and denied in part.

## STANDARDS

Federal Rule of Evidence ("FRE") 702 establishes that expert opinion evidence is admissible if (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied these principles and methods. Fed. R. Evid. 702. Under *Daubert*[1] and its progeny, the district court's inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 882 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotations and citation omitted).

"The trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (quotations and citation omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude

---

[1] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car*, 709 F.3d at 883.

The test of reliability is flexible. *Primiano*, 598 F.3d at 564. For scientific opinions, the court must assess the expert's reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance. *Id.* at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Id.* (quotations and citations omitted). With non-scientific experts, "the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" and "reliability depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir.2000). The test "is not the correctness of the expert's conclusions but the soundness of his [or her] methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the factfinder decides how much weight to give that testimony. *Id.* at 564-65.

## BACKGROUND

Plaintiff Rosemary Siring was a tenured professor at the University of Montana when she took a position as a tenure-track professor at Eastern Oregon University ("EOU") in 2006.[2] In her third year of instruction at EOU, she was evaluated. At the end of her fourth year of

---

[2] Defendant Oregon State Board of Higher Education is the statutory governing board of the Oregon University System and its seven universities, one of which is EOU. The other six universities in the Oregon University System are (1) Oregon Institute of Technology; (2) Oregon State University; (3) Portland State University; (4) Southern Oregon University; (5) University of Oregon; and (6) Western Oregon University. Additionally, Oregon Health Sciences University is an affiliated institution.

instruction, she was placed on a one-year terminal contract. Siring alleges that she was terminated based on her age and perceived disability.

Plaintiff's proffered expert, Jean Stockard, Ph.D., has worked at the University of Oregon for nearly 40 years. She is a faculty member and served on and chaired the elected personnel committees of the College of Arts and Sciences and the University. Those committees review personnel cases, including tenure and promotion decisions, and make recommendations as to their disposition. During her career, Dr. Stockard has: (1) served as Department Head and Associate Head at the University of Oregon; (2) served as an external reviewer for other universities, where she provided independent reviews of candidates for promotion and tenure; (3) served three terms as President of the University of Oregon chapter of the American Association of University Professors ("AAUP") and one term as President of the state of Oregon chapter of the AAUP; (4) served as chair of the AAUP committees charged with addressing issues related to academic freedom and discrimination based on gender; (5) served as a grievance counselor, assisting individuals navigating the University's grievance process; (6) served on appeal committees, reviewing appealed decisions and making recommendations as to their proper disposition; (7) developed tenure processes for the University of Oregon in compliance with the Oregon Administrative Rules ("OARs"); (8) reviewed tenure processes for compliance with the OARs; and (9) engaged in scholarly research on the ways in which institutional practices and policies affect the career progression of women in science and engineering sectors of the academy.[3]

Dr. Stockard was provided with more than 5,500 pages of documents from this case,

---

[3] Information regarding Dr. Stockard's knowledge and experience was obtained from her curriculum vitae, her written report in this case, her supplemental written report, and her hearing testimony.

including more than 3,000 pages produced by Defendant. Dr. StockardShe carefully reviewed

the deposition transcripts of Siring, Dean Lauritzen, Provost Jaeger, Dr. McNerney, Dr. Costi,

and Dr. Evans. Among the exhibits and discovery documents that Dr. Stockard received and

reviewed were e-mail communications, written reports, and the EOU Promotion and Tenure

Handbook. Dr. Stockard prepared a written opinion and, in response to Defendant's Motion in

Limine, a supplemental opinion, in which she opines about the Oregon University System's

tenure review process generally and EOU's tenure review process specifically with respect to

Siring ("Stockard Report") and ("Stockard Supplemental Report"). Dkts. 37 and 60, respectively.

Dr. Stockard concludes, among other things, that there were significant deficiencies in the tenure

review process with respect to Siring and that there was "no scholarly reason for Siring's

dismissal" that was apparent from the materials reviewed by Dr. Stockard. Dkt. 37 at 8.

## DISCUSSION

Defendant argues that the Stockard Report is not admissible under FRE 702 because (1) it

is based on an inaccurate and incomplete version of the facts; (2) it is not the product of reliable

methods that have been reliably applied to the facts of the case; and (3) it will not help a jury

understand the evidence or determine a fact at issue in this case. Defendant also argues that

Dr. Stockard's opinions are not relevant and that, under FRE 403, any probative value of the

Stockard Report is outweighed by the danger that it will confuse the jury and unfairly prejudice

EOU. Defendant moves to exclude the Stockard Report and any testimony at trial by

Dr. Stockard.

## A. Factual Basis of the Stockard Report

The Stockard Report sets out the facts on which it is based. Defendant asserts that the

facts relied upon by Dr. Stockard are incorrect. The facts that Defendant asserts are "incorrect"

are facts that are in dispute in this case, such as whether EOU gave Siring sufficiently clear and

appropriate written expectations of what performance was required for her to receive tenure, specific recommendations for improvement, specific criticisms or identified shortcomings, and appropriate mentoring. Dr. Stockard responded to Defendant's argument in the Stockard Supplemental Report, reiterating her interpretation of the facts and the evidence in the record that she believes supports her interpretation of the facts. Dkt. 60.

It is for the jury to decide what the facts are in this case, and if the jury disagrees with Dr. Stockard's interpretation of the facts, that goes to the weight and impeachability of Dr. Stockard's testimony, not its admissibility. *See, e.g., Primiano*, 598 F.3d at 564-65; *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (finding that questions regarding the nature of the evidence relied on by the expert go to the weight of the testimony, "an issue properly explored during direct and cross-examination" (citing *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (citation and quotation marks omitted)))).

Defendant also argues that the Stockard Report and testimony should be excluded because Dr. Stockard bases her opinions on Siring's version of the facts. Defendant relies on *Arjangrad v. JP Morgan Chase Bank, N.A.*,, No 3:10-cv-01157-PK, 2012 WL 1890372 (D. Or. May 23, 2012), to support its argument. *Arjangrad* was an employment discrimination case in which the expert was given only select and limited documents and data from the plaintiff's counsel and was not given the employment investigation file or written report created by the defendant during its investigation. *Id*. at *6. The court excluded the expert's report because, among other reasons, the expert did not know of facts that would enable the expert to express a

reasonably accurate opinion and, thus, the report was unreliable. *Id*.

Here, Dr. Stockard reviewed the deposition transcripts of Defendant's witnesses, their email communications, documents produced in discovery, and Defendant's written reports relating to Siring. The information reviewed and relied on by Dr. Stockard was not limited only to documents supporting Plaintiff's theory of the case. To the extent Defendant believes the Stockard Report and testimony construes the information erroneously in Plaintiff's favor, that is an issue for cross examination. *See, e.g., Hangarter*, 373 F.3d at 1017 n.14 (noting that arguments relating to the selection of documents reviewed by the expert did not go to the reliability of the expert's "methodology" but went to the weight of the testimony).

## B.  Reliability of the Stockard Report

An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee notes, 2000 amendments.[4] If an expert is relying solely or primarily on experience, then the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*.

The Court finds that Dr. Stockard's substantial experience in the Oregon University System as a faculty member and member of personnel committees, many professional appointments relating to educational policy and management, and extensive scholarly activities and publications in relevant research areas qualify Dr. Stockard to opine about tenure-track

---

[4] Although the advisory committee notes are not binding on the Court, they are "of weight" in interpreting the rules. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988); *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444 (1946).

faculty evaluation and review policies and procedures in general and the specific evaluation and review of Siring.

Defendant argues, however, that Dr. Stockard's testimony is not reliable because she does not explain how her specialized knowledge and experience leads to her conclusions and how her experience has led her to understand and define what constitutes "usual practice." Def's Br. at 9-10. The Court disagrees.

Assessing the reliability of expert testimony based on specialized knowledge, unlike scientific or technical expert testimony, is not contingent upon a particular methodology or technical framework. *Hangarter*, 373 F.3d at 1018. "This sort of analysis is dependent upon the witness's knowledge of, and experience within, the [relevant] industry." *Hangarter*, 373 F.3d at 1017 n.14; *see also Hankey*, 203 F.3d at 1169 (finding that the *Daubert* factors do not apply when evaluating non-scientific experts and that "reliability depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it").

Dr. Stockard has significant knowledge and experience in the Oregon University System and in implementing the OARs in the context of tenure reviews, evaluations, appeals, and grievances. The Stockard Report repeatedly references Dr. Stockard's personal experience in the Oregon University System and Dr. Stockard's understanding of and experience in implementing the OARs relating to university faculty evaluations and tenure-track processes in explaining Dr. Stockard's assessment of what constitutes normal practices and her conclusions. Additionally, the Court conducted voir dire of Dr. Stockard, further ascertaining her background, experience, knowledge, and how she applied that experience and knowledge to reach her opinions in the Stockard Report.

Defendant relies heavily on *Arjangrad* to argue that Dr. Stockard is essentially opining

that the usual tenure practice is what she says it is, and thus her testimony should be excluded. In

*Arjangrad*, the Court found that

> [The expert] never explains how his experience performing
> discrimination investigations or his expertise advising employers
> and HR professionals led him to understand and define generally
> accepted standards of HR investigation practices. Instead, his
> report merely asserts that "[e]mployers and lawyers who advise
> employers have broadly recognized that sound HR practice
> dictates" companies conduct prompt, thorough, and impartial
> investigations of discrimination complaints, just as case law
> requires them to do with harassment complaints. This is circular
> reasoning—generally accepted HR practice requires certain
> investigation practices because [the expert] asserts that employers
> and advisors (like himself) believe it to be so. [The expert],
> however, does not offer any personal observations or data gathered
> from his experience demonstrating that large companies actually
> adhere to these standards.

*Arjangrad*, 2012 WL 1890372, at *5.

Here, Dr. Stockard includes in her report numerous examples of her personal

observations and experience with how tenure-track reviews are actually conducted and how the

OARs are applied. Dr. Stockard also explained in her voir dire testimony during the hearing on

Defendant's Motion in Limine ("hearing testimony") that she relied on her personal experiences

in participating in annual and third-year reviews, making tenure evaluation recommendations,

evaluating tenure appeals, assisting faculty members with tenure-related grievances, drafting and

reviewing tenure policies to ensure they comply with the OARs, serving on AAUP committees,

advising outside universities on tenure decisions, implementing the OARs, and speaking with

others regarding tenure policies and procedures over her 40 years of experience in academia in

reaching her conclusions in this case. She also testified that in her experience, tenure review

policies do not largely differ in their structure, format, and procedures between institutions, but

that the differences between institutions usually include only the weight given to certain factors

considered in granting tenure (*e.g.,* the weight given to teaching skill versus the weight given to

publication). She further testified that it is her understanding, and a basic assumption underlying her conclusions in this case, that all of the universities in the Oregon University System are required to follow the OARs. Thus, unlike the proffered expert in *Arjangrad*, Dr. Stockard has provided a sufficient explanation of how her personal experience and knowledge led her to understand and define the generally accepted standards for tenure review policies in the Oregon University System.

The Court finds that Dr. Stockard's experience, training, and education provide a sufficient foundation of reliability. *See Hangarter*, 373 F.3d at 1018; *Hankey*, 203 F.3d at 1169.

## C.  Assisting the Trier of Fact

Expert opinion must have "substance such that it would be helpful to the jury." *Alaska Rent-A-Car*, 709 F.3d at 883. In other words, it should "address an issue beyond the common knowledge of the average layman." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.9 (9th Cir. 2002). Expert opinions on an ultimate issue of fact are admissible, but expert witnesses may not opine as to legal conclusions, *i.e.,* an opinion on an ultimate issue of law. *See Hangarter*, 373 F.3d at 1016; Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

Defendant argues that the Stockard Report (1) will not aid a jury in making a decision but merely substitutes Dr. Stockard's judgment for the jury's because the subject matter of the Stockard Report is within the common knowledge of the average layperson; and (2) contains legal conclusions and interpretations of Oregon law that usurp the court's role in explaining the law to the jury. Def's Br. at 12. Defendant's arguments are unavailing.

### 1.  The subject matter of the Stockard Report is not within the knowledge of the average layperson

The particularized and specialized evaluation and review practices, policies, and

procedures relevant to a tenure-track professor are not within the common knowledge of the average layperson. How tenure-track professors are evaluated, reviewed, and promoted in the Oregon University System is not necessarily similar to how a layperson may be evaluated, reviewed, or promoted at his or her job. It is both specialized and specifically governed in the Oregon University System by numerous administrative rules. *See* Or. Admin. R. 580-021-0100 through 580-021-0140. Professorial tenure is a unique system, and the Court finds that as an expert in the field of tenure-track evaluation, review, and promotion, Dr. Stockard's opinion addresses issues beyond the common knowledge of the average layperson and will aid a jury in making its determination. Accordingly, Dr. Stockard may testify regarding the Oregon University System standards and practices for tenure-track review, evaluation, promotion, and termination and whether EOU complied with those standards in its decisions relating to Siring. *See, e.g., Hangarter*, 373 F.3d at 1016.

### 2. The Stockard Report does not usurp the Court's role

Defendant also argues that Dr. Stockard's report is not helpful to the jury because it merely reflects Dr. Stockard's understanding of the law and is improper because an expert cannot displace the court's role of explaining the law to the jury. Dr. Stockard's report includes more than just her interpretation of the regulations that govern the Oregon University System. She discusses her personal experience serving on the University of Oregon's personnel committees and advising other universities on personnel issues. She then compares how EOU's treatment of Siring differs from her personal experiences.

Further, an expert's opinion that relies in part on the expert's understanding of state law does not improperly usurp the court's role. *Hangarter*, 373 F.3d at 1017. An expert may "properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms" and may "refer to the law in expressing an

opinion without that reference rendering the testimony inadmissible." *Id*. (quoting *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (quotation marks omitted)). The Stockard Report does not improperly invade the province of the Court.[5]

### 3. Dr. Stockard may not opine as to EOU's intent, motive, or state of mind

Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind. *See, e.g., DePaepe v. Gen. Motors Corp.,* 141 F.3d 715, 720 (7th Cir.1998) ("He could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify as an expert that GM had a particular motive."); *Hill v. Novartis Pharms. Corp.*, No. 1:06-cv-00939-AWI-DLB, 2012 WL 5451816, at *2 (E.D. Cal. November 7, 2012) ("The Court finds this and other testimony regarding Defendant's intent, motives or state of mind to be impermissible and outside the scope of expert testimony."); *Johnson v. Wyeth LLC*, No. 10-C-2690, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (precluding plaintiff's experts from offering "opinions concerning defendants' motive, intent, knowledge, or other state of mind"); *Loewen v. Wyeth, Inc*., No. 03-J-2166, 2011 WL 6942870, at *4 n.3 (N.D. Ala. Nov. 14, 2011) (excluding expert testimony that "constitutes [the expert's] personal views as to the intent, motive, and state of mind of [the defendant]"); *George v. Kraft Foods Global, Inc*., 800 F. Supp. 2d 928, 932-33 (N.D. Ill. 2011) (excluding expert's state of mind opinion as speculative and unhelpful); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (excluding expert testimony "as to the knowledge, motivations, intent, state of mind, or purposes of [defendant], its employees, the

---

[5] To the extent, however, that Dr. Stockard is permitted to testify about matters contained within her report and supplemental report, the reports themselves would be cumulative and not necessarily admissible in addition to the trial testimony.

FDA, or FDA officials"); *In re Rezulin*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (finding that "the opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise").

Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury. *See, e.g.,United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (rejecting expert testimony regarding the purpose of a transaction because "[m]uch of [the expert's] testimony consists of nothing more than drawing inferences from the evidence that [the expert] was no more qualified than the jury to draw"); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *8 (N.D. Ill. May 17, 2012) (finding that "the jury is fully capable of considering the issue of intent based on the evidence presented at trial"); *United States Gypsum Co. v. Lafarge N. Am., Inc.*, 670 F. Supp. 2d 768, 775 (N.D. Ill. 2009) (finding that expert testimony on intent is no more than drawing inferences from the evidence, that "[s]uch opinions merely substitute the inferences of the expert for those the jury can draw on its own," and that testimony about intent is not helpful to the jury); *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 700 (W.D.N.C. 2003) ("[T]he jury should hear and/or see first-hand any relevant evidence pertaining to the Defendant's intent. Then the jury, not the witnesses, should consider the facts and make its own determination regarding Defendant's intent.").

The Court holds that Dr. Stockard may not opine about the intent, motive, or state of mind of the EOU decisionmakers, the unexpressed reasons for their decisions, or what they may have been thinking. Thus, Dr. Stockard's conclusions in the Stockard Report that "it does appear

quite plausible that the reason for the dismissal was the allegation of alcoholism" and that "[i]t appears very likely that these actions of the Program Director were significant in promoting the negative decision," and any similar testimony, are excluded. Dkt. 37 at 8 (Stockard Report at 6).

**D.  Relevancy and Unfair Prejudice**

Defendant also argues that the Stockard Report and any testimony should be excluded because they are irrelevant and unfairly prejudicial.

### 1.  Relevance

Defendant asserts that the Stockard Report merely opines that EOU's procedures did not comply with "usual" practices in the Oregon University System. Thus, Defendant argues, the Stockard Report is not relevant because it does not opine that EOU treated Siring differently than any other professor at EOU and, therefore, does not support an inference of discrimination.

Expert testimony is relevant if it will help the jury understand a fact at issue. *See, e.g., Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano*, 598 F.3d at 565 (finding that expert testimony "is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry"). Expert testimony need not address every element of a claim, but need only help the jury understand the evidence or "*a* fact in issue." Fed. R. Evid. 702(a) (emphasis added).

Siring proffers Dr. Stockard as an expert in the usual policies and procedures for tenure review and evaluation in the Oregon University System and to opine on the ways in which EOU failed to follow those policies and procedures with regard to its evaluation of Siring. Although Dr. Stockard does not compare how EOU treated Siring with how EOU treated any other employee, which might more directly support an implication of discrimination, such a direct link is not required to render Dr. Stockard's opinion relevant. Siring is allowed to proffer circumstantial evidence to the jury to assist the jury in determining whether EOU based its employment decision relating to Siring on legitimate, nondiscriminatory reasons or whether

EOU made its decision with an improper discriminatory or retaliatory motive. *See, e.g., Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 550 (9th Cir. 1982) (finding that when inferring discriminatory intent, all evidence, "direct and circumstantial, statistical and nonstatistical" relevant to such intent should be considered).

Dr. Stockard's testimony that EOU failed to follow the usual and customary procedures and policies of the Oregon University System in EOU's tenure evaluation and review of Siring is information that would be helpful for a jury in determining the propriety of EOU's employment decisions with regards to Siring. *See, e.g., Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1179 (9th Cir. 2007) (rejecting argument that expert report should be excluded because the expert's opinion did not prove discrimination, noting that a jury may agree that the expert's evidence was insufficient to prove discrimination, but that does not warrant excluding the expert testimony); *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1137 n.14 (9th Cir. 2003) (noting that expert testimony that the defendant departed from professional standards "does shed light on the propriety" of the defendant's actions). Even if Dr. Stockard's report does not, by itself, provide evidence to prove all of the elements of Siring's claim, that does not render the opinion irrelevant. Because Dr. Stockard's testimony is helpful for the jury to decide a fact in issue, it is relevant.[6] Attacking the circumstantial nature of Dr. Stockard's evidence is an issue of credibility and weight to be argued to the jury, not admissibility.

### 2. Unfair prejudice and confusion

Defendant also argues that the Stockard Report should be excluded under FRE 403 because it is unfairly prejudicial and confusing to the jury. Def's Br. at 15. Relevant testimony may be excluded under FRE 403 if its probative value is substantially outweighed by a danger of

---

[6] As stated previously, however, Dr. Stockard's opinions as to EOU's motive, intent, or state of mind are not helpful to the jury and are excluded.

unfair prejudice, confusing the issues, or misleading the jury.[7] Fed. R. Evid. 403; *see also Hankey*, 203 F.3d at 1172. Making this determination "requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value." *Hankey*, 203 F.3d at 1172. FRE 403 "favors admissibility" while "providing the means of keeping distracting evidence out of the trial." *Id.*

The first reason articulated by Defendant for excluding Dr. Stockard's testimony under FRE 403 is that criticism of EOU's tenure-track review policies will confuse the jury because it will distract the jury from the essential question of determining whether there was discriminatory intent with regard to the employment decisions relating to Siring. As noted above, however, testimony that an employer failed to follow industry standards is relevant evidence for a jury to consider when determining motive and intent. Thus, it is relevant and helpful for the jury in making its determination whether EOU acted with discriminatory intent and the risk, if any, of confusing the jury does not substantially outweigh the probative value of this evidence.

The second reason advanced by Defendant for excluding Dr. Stockard's testimony is that she is cloaked in an "aura of authority," which might induce the jury to overemphasize her testimony and significantly prejudice Defendant. All experts, however, are cloaked in an "aura of authority," and they attempt to offer testimony that is helpful to one party and not helpful to the opposing party. If that were a sufficient basis to exclude expert reports, little expert testimony would survive. That is not, however, the proper analysis for expert testimony.

The gatekeeping function of the trial court in making a determination of relevance and reliability is designed to exclude "unreliable nonsense opinions." *Alaska Rent-A-Car*, 709 F.3d

---

[7] The other potential dangers addressed in FRE 403 are not at issue in this case.

at 883. It is this function that protects parties from unfair prejudice. *See Mukhtar*, 299 F.3d at 1063-64 (finding that the trial court's "special obligation to determine the relevance and reliability of an expert's testimony" is vital to "ensure accurate and unbiased decision-making by the trier of fact" and is "particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony"). The Court has found that Ms. Stockard is a qualified expert and that her testimony is relevant and reliable. The fact that her conclusions are helpful to Siring and not to Defendant does not render her testimony unfairly prejudicial.[8]

## CONCLUSION

The Court finds Dr. Jean Stockard to be a qualified expert. Defendant's motion in limine to exclude Dr. Stockard's expert testimony is GRANTED IN PART AND DENIED IN PART. Dr. Stockard's testimony as to the intent, motive, or state of mind of Eastern Oregon University and its personnel is EXCLUDED, but her remaining testimony is relevant and reliable and will be ADMITTED. To the extent that Dr. Stockard's reports would be cumulative of her testimony, the reports will not be admitted.

**IT IS SO ORDERED**.

DATED this 11th day of June, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[8] The Court notes, however, that to the extent the testimony of Dr. Stockard may confuse the jury or cause prejudice for Defendant regarding the fact that Siring is suing EOU for discrimination and retaliation and not for any violation of the OARs or breach of contract for failing properly to implement the EOU Promotion and Tenure Handbook, clarifying jury instructions may be appropriate.

PAGE 17 – OPINION AND ORDER