**Michael Porter, P.C., OSB No. 003560**
mike.porter@millernash.com
**Cody J. Elliott, OSB No. 091027**
cody.elliott@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204-3699
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

*Attorneys for Defendant Eastern Oregon University*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **ROSEMARY SIRING,** an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>**OREGON STATE BOARD OF HIGHER EDUCATION** acting by and through **EASTERN OREGON UNIVERSITY,** a public educational institution of higher learning,<br><br>         Defendant. | Case No. 3:11-CV-1407-SI<br><br>**DEFENDANT'S MOTIONS IN LIMINE** |

## **MOTIONS**

Defendant, Eastern Oregon University ("EOU"), moves for orders in limine as set forth below.

Page 1 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

**Motion 1:** An order that plaintiff, Rosemary Siring, may not submit evidence pertaining to any alleged discriminatory actions that occurred after Siring's placement on a terminal contract. (Fed R Evid 402, 403.)

This case is about EOU's decision to place Siring on a terminal contract. But Siring appears to be making an attempt to draw the jury's attention to her terminal year by submitting a significant amount of evidence about events that occurred well after she was placed on a terminal contract. It is plain that Siring is trying to back-door her dismissed retaliation claim, which was based on issues that arose in her terminal year.

Evidence of any alleged act or communication that Siring perceived to be (or intends to argue is) discriminatory that occurred after Siring's placement on terminal contract is irrelevant. Evidence must tend to make a consequential fact more or less probable. Fed R Evid 402. Evidence of events or communications that occurred *after* Siring was placed on a terminal contract does not make it more or less probable that EOU's decision was retaliatory or based on prohibited age or disability animus.

For example, on pages 4-5 of plaintiff's trial brief, Siring identifies "[o]ther ways" in which she was treated differently, such as her role in a graduation ceremony, communication and scheduling issues, and various other complaints. All of these perceived slights occurred well after Siring was placed on a terminal contract, and have no connection to EOU's decision to place Siring on a terminal contract.

Siring's proposed exhibits 43, 44, 46-48, 50-54, and 61-75 all appear to be evidence that should be excluded as they reflect post-decision issues Siring complains about. Similarly, the witness testimony described in the following areas of plaintiff's

Page 2 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

witness statements concern events in Siring's terminal year and should be excluded as irrelevant:

- Siring, page 10, second full paragraph through last full paragraph of page 11, all addressing events in 2011;

- Ron Siring, page 15 beginning with "She suffered" on the first line of 15 through end of proposed testimony on page 16, all complaining about Siring's relationship with Betsy Costi in the terminal year;

- Adams, page 24, first full paragraph, and the last paragraph on page 24 finishing on page 25, apparently all about Costi and apparently in the terminal year;[1]

- Costi, page 27, one-third down page, "Dr. Costi solicited others . . ." through end of paragraph and page 27, paragraph beginning "Will admit that she made reference" through end of proposed testimony.

*See also* Defendant's Objections to Plaintiff's Exhibits, Witnesses, Lay Witness Statements, and Substantive Deposition Testimony Designations.

Further, Siring's contentions in the parties' joint pretrial order ("PTO") suggests that she intends to use vague statements about perceived slights to try to justify inclusion of post-decision evidence. For example, Siring contends that she was denied

---

[1] Even if before the terminal year, this is not relevant. *See* Defendant's Objections to Plaintiff's Exhibits, Witnesses, Lay Witness Statements, and Substantive Deposition Testimony Designations.

Page 3 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

tenure, "subjected to adverse terms and conditions of employment as alleged herein," and subjected to the termination of her employment." PTO at 18. What "as alleged herein" means is unclear because Siring alleges no adverse employment actions in the PTO other than her placement on a terminal contract.

Siring also makes various vague fact allegations in the PTO about plans to inform Mount Hood Community College ("MHCC") personnel of an alcohol problem, a vague conspiracy assertion, opposition to Siring's "supposed" (but apparently not actual) application for another position with MHCC, and accusations that Siring is "really crazy." PTO at 17. If Siring intends to argue that the issues described in paragraph 4 of her fifth claim (PTO at 17) are adverse employment actions, they are not as a matter of law. In disparate treatment cases, acts that "'constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment, with significantly different responsibilities'" are adverse employment actions. *EEOC v. C.R. England, Inc.* 644 F3d 1028, 1039 (10th Cir 2011) (*quoting Sanchez v. Denver Pub. Schs.*, 164 F3d 527, 532 (10th Cir 1998) (*see also Manatt v. Bank of America, NA*, 339 F3d 792, 803 (9th Cir 2003) (ostracism not an adverse employment action).[2] Siring's contentions in paragraph 4 of her fifth claim (PTO at 17) are not.

---

[2] Applying adverse employment action for discrimination claims to retaliation claim, a standard later changed by *Burlington N. & Santa Fe R. Co. v. White*, 548 US 53, 126 S Ct 2405, 165 L Ed 2d 345 (2006), but still accurate for discrimination claims.

Page 4 -    Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

PDXDOCS:2013076.2

Evidence about post-decision issues between Siring and EOU should also be excluded because Siring did not include in the PTO the apparent claims she appears to now be trying to make. The pretrial order controls the course of the action. Fed R Civ P 16(b). It contains the contentions of the parties, and a party seeking to make a claim in the pretrial order "should do so with specificity and clarity so as to minimize the ill effects of that practice." *See, e.g.*, *Hunt v. Cnty. of Orange*, 672 F3d 606, 616 (9th Cir 2012); *Wilson v. Kenneth Muckala, M.D.*, 303 F3d 1207, 1216 (10th Cir. 2002) (overturning jury verdict on claim not sufficiently identified in pretrial order).

Here, Siring's proposed evidence about (among other things) her compensation for a MHCC course, a seminar that was rescheduled without notice, and attempts to deprive her of departmental planning opportunities and supervision responsibilities does not support any claim Siring made in the PTO. If Siring claims that some of this evidence is relevant to whether EOU regarded her as disabled, she is wrong—none of these perceived slights can be relevant to whether EOU placed Siring on a terminal contract because of a perceived disability because they all occurred *after* EOU made its decision. None of Siring's proposed evidence about alcohol that post-dates EOU's decision to place her on a terminal contract could have caused Carol Lauritzen or Michael Jaeger (or anyone else) to regard Siring as disabled.

Siring is trying to bootstrap perceived slights from her terminal year into her claims. But those alleged slights are not relevant in any way to EOU's decision to place her on a terminal contract. Moreover, any evidence in this category that could have

Page 5 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

marginal reliance is unduly prejudicial because it creates a substantial risk of jury confusion about whether the case is about EOU's decision to end Siring's employment or whether it is about the relationship between Siring and Costi in Siring's terminal year.

The case is about EOU's decision to end Siring's employment, and Siring should not be permitted to change the nature of it with irrelevant evidence.

**Motion 2:** **An order that Siring may not submit evidence suggesting that Lauritzen or the College Personnel Committee (the "CPC") had received or was aware of Siring's May 24, 2010, letter to Jaeger, and further ordering that Siring's counsel not suggest or imply that such evidence exists. (Fed R Evid 602, 403.)**

Siring's retaliation claim is based on her May 24, 2010, letter to Jaeger. She asserts that EOU's decision to place her on a terminal contract resulted from that letter. It is undisputed that immediately after a May 17, 2010, meeting with Siring, Lauritzen began to arrange a meeting of the CPC that took place at noon on May 24, 2010. Findings and Recommendation ("FR") at 18-19. Siring mailed her May 24, 2010, letter to Lauritzen, and she has no evidence that Lauritzen or the CPC had any knowledge of it. FR at 19-20; Declaration of Cody J. Elliott in Support of Defendant Eastern Oregon University's Motion for Summary Judgment, Ex. 9 at 2 (filed July 13, 2013). In her response to EOU's fifth interrogatory, Siring stated that the letter was mailed to Lauritzen on May 24, 2010. Both Lauritzen and Allen Evans—a member of the CPC in 2010—testified that they had no knowledge of Siring's letter at the time of the meeting.

Fed R Evid 602 permits testimony "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Siring

Page 6 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

PDXDOCS:2013076.2

cannot testify that Lauritzen or the CPC knew about her letter because she has no personal knowledge of the matter. No deposition testimony or other information that has been revealed through discovery suggests that Lauritzen or the CPC was aware of Siring's letter. According to Siring's own testimony, her letter was created after EOU informed Siring on May 17, 2010, that she would be placed on a terminal contract. FR 18. Siring may attempt to blur the record with her own speculation or with statements or questions by her lawyer that imply that Lauritzen or the CPC reviewed or knew about her letter before the CPC meeting. But Siring cannot meet the prerequisite of personal knowledge under Fed R Evid 602. Any "evidence" that she could offer to try to suggest this point should alternatively be excluded under Fed R Evid 403 because any probative value of the evidence would be outweighed by the risk of unfair prejudice to EOU and the danger of confusing or misleading the jury.

**Motion 3:** **An order that Siring, her expert, any other witness, and her counsel not state or imply that a fourth-year review of Siring's progress toward tenure was impermissible. (Fed R Evid 602, 402, 403.)**

Siring has asserted that EOU's review of her progress toward tenure in her fourth year is evidence of discrimination. But as the court has already recognized, tenure-track faculty members are appointed for one year, and EOU had a right to review Siring's progress at any time. FR at 42-43 (citing OAR 580-021- 0100(1)(b)(A), -0110(1)-(2), -0305(1), -0315(1)). Moreover, it is undisputed that other tenure-track faculty members at EOU had received terminal contracts after their fourth year of instruction. FR at 42.

Page 7 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

Siring's summary judgment briefing suggests that she may argue that being evaluated in her fourth year was impermissible. But she has no personal knowledge about reviews in the fourth year (Fed R Evid 602) and her view or argument that a fourth-year review was impermissible is not evidence of discrimination, circumstantial or otherwise (Fed R Evid 402). The court has recognized that Siring must prove her case with circumstantial evidence, but her assertions cannot be based on something that EOU had the legal right to do—evaluate her progress and make a year-to-year determination about it. Moreover, statements or arguments that a fourth-year review is impermissible are substantially outweighed by the risk of unfair prejudice in which the jury would be misled into believing that somehow a fourth-year review is connected to discriminatory animus, which cannot be the case given the nature of Siring's employment relationship, which was based on annual appointments. Fed R Evid 403.

**Motion 4:** **An order precluding Siring from offering evidence concerning the amount of settlement that resulted from the lawsuit that her expert Jean Stockard brought against the Oregon University System ("OUS"). (Fed R Evid 402, 403.)**

The court has determined that Stockard may testify as an expert concerning some tenure practices. In 2006, Stockard brought an employment lawsuit against the Oregon State Board of Higher Education. Lane County Circuit Court Case No. 160612397. The lawsuit eventually settled, reportedly for $500,000.

EOU intends to question Stockard about the fact that she sued OUS, because that fact raises questions about her motives for testifying as an expert against one

Page 8 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

of OUS's institutions in this litigation.  EOU anticipates that Siring may attempt to respond by questioning Stockard about the settlement amount.

The court should not permit Siring to introduce the amount of settlement.  Cases settle for a wide range of reasons, and the amount of settlement has no bearing on whether Stockard's testimony should be evaluated in light of the fact that she has had her own problem with OUS, demonstrated by her prior lawsuit against it.  In addition, any potential relevance is offset by the potential confusion and unfair prejudice that would arise if Stockard testified about the amount of settlement.  Unless a distracting "mini-trial" with no relevance to Siring's claim occurred, the jury could be left with the impression that OUS did something wrong because the settlement could sound large to some jurors.  Indeed, news reports quoted an e-mail from Craig Crispin (Siring's attorney) at the time, indicating that the payment was an "objective demonstration that Stockard was wronged by the administration."  *See* <u>UO Settles Professor's Lawsuit for $500,000</u>, *available at* http://www.katu.com/news/local/11857076.html (last visited Sept. 12, 2013).  Additionally, EOU could suffer unfair prejudice because the jury could think that the settlement has some relationship to damage claims by Siring.

**Motion 5:** **An order that Siring and her counsel not be permitted to assert that she was denied tenure.  (Fed R Evid 601; 402.)**

In her proposed jury instructions and verdict form (and elsewhere), Siring indicates that EOU denied her tenure.  This is a mischaracterization of the adverse

Page 9 -   Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2

employment action at issue, and the court should order that Siring not refer to being denied tenure.

Under OUS regulations, tenure-track professors are appointed to yearly contracts, and each faculty member's performance is subject to evaluation each year. OAR 580-021-0110(2). It is undisputed that there is no right to reappointment and that an institution need only provide sufficient notice before discharging a tenure-track faculty member. OAR 580-021-0315(2); OAR 580-021-0305(1). There is no dispute that these rules governed the relationship between EOU and Siring, or that EOU exercised its notice option with respect to her. FR at 20-21.

A decision about granting or denying tenure is a different decision. The way in which a tenure decision is made is set forth on pages 15 and 16 of the Faculty Promotion and Tenure Handbook. *See* Plaintiff's Ex. 2 at SIRING002637-39. The tenure application process includes submission of a portfolio during the fifth year of service, review of the portfolio by the CPC, consideration of the portfolio and recommendations of the CPC and dean by the Faculty Personnel Committee ("FPC"), and a recommendation of the FPC to the provost. That did not happen here.

Siring's attempt to treat her placement on a terminal contract as two separate decisions is misleading and inaccurate. No witness can testify that Siring was denied tenure because no witness has personal knowledge about it (because it did not happen). Fed R Evid 602. Moreover, allowing testimony or argument that Siring was denied tenure would create a significant risk of unfair prejudice and confusion for the

Page 10 - Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

PDXDOCS:2013076.2

jury. It could appear that EOU made two separate decisions when it plainly made only one. Thus, attempts to suggest that there is evidence of a denial of tenure should be excluded under Fed R Evid 402.

**Motion 6:** **An order excluding any references to a statement by Costi in June 2011 that Siring was treated like "an elderly aunt who is only partially coherent." (Plaintiff's proposed Exhibit 53; Fed R Evid. 402, 403.)**

This evidence should be excluded under EOU's first motion in limine, but to the extent Siring attempts to argue it should be treated differently, it should not. As the court recognized, this remark "had nothing to do with job performance and was made long after Siring was placed on a terminal contract." FR at 32. Costi's remark is one made by a person other than a decision-maker, more than a year after the adverse action, about a specific period of time, and it does not tend to make it more or less probable that Lauritzen and Jaeger placed Siring on a terminal contract because of her age. Fed R Evid 402. For evidence of a stray remark like this to be relevant, there must be a nexus between the remark and the challenged employment decision. *See, e.g., Hollister v. Mrs. Gooch's Natural Food Mkts., Inc.*, 919 F Supp 2d 1101, 1107-08 (D Haw Jan. 23, 2013) (non-decision-maker's comment, which was not connected to an adverse employment action, was a stray remark that could not establish discriminatory animus) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F3d 1217, 1221 (9th Cir 1998)). No nexus between Costi's remark and Siring's placement on a terminal contract exists here—on its face, Costi's remark relates to the specific time period during which the remark was made, and it has no relationship to the time or process that led to Siring's placement on a

Page 11 - Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

PDXDOCS:2013076.2

terminal contract. And even if the evidence were marginally relevant, the risk of confusing and distracting the jury with its introduction outweighs its probative value under Fed R Evid 403.

**Motion 7:** **An order that Siring not be permitted to testify that her job in Gresham was harder than a job in LaGrande. (Fed R Evid 402, 403.)**

On page 3 of her witness statement, Siring states her intention to testify that the LaGrande campus served fewer students than the Gresham campus and that she had more students. This testimony does not make any consequential fact more or less probable and should be excluded under Fed R Evid 402. Moreover, it implies Siring either was treated unfairly or had a harder job, which could lead to jury confusion about whether Siring could have been treated differently or was mistreated. Accordingly, the evidence should be excluded under Fed R Evid 403.

DATED this 12th day of September, 2013.

        MILLER NASH LLP

        s/ Cody J. Elliott
        Michael Porter, P.C., OSB No. 003560
        mike.porter@millernash.com
        Cody J. Elliott, OSB No. 091027
        cody.elliott@millernash.com
        Phone: (503) 224-5858
        Facsimile: (503) 224-0155

        *Attorneys for Defendant Eastern Oregon University*

Page 12 - Defendant's Motions in Limine

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

PDXDOCS:2013076.2

I hereby certify that I served the foregoing defendant's motions in limine on:

>Mr. Craig A. Crispin
>E-mail:  crispin@employmentlaw-nw.com
>Ms. Shelley D. Russell
>E-mail:  shelley@employmentlaw-nw.com
>Ms. Jackie Burnett
>E-mail:  jackie@employmentlaw-nw.com
>Crispin Employment Lawyers
>1834 S.W. 58th Avenue, Suite 200
>Portland, Oregon  97221
>Fax:  (503) 293-5766

>*Attorneys for Plaintiff*

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 12th day of September, 2013.

>s/ Cody J. Elliott
>Cody J. Elliott, OSB No. 091027

>*Of Attorneys for Defendant*
>*Eastern Oregon University*

Page 1 -  Certificate of Service

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:2013076.2