IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROSEMARY SIRING**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**OREGON STATE BOARD OF HIGHER EDUCATION** acting by and through **EASTERN OREGON UNIVERSITY**, a public educational institution of higher learning**,**<br><br>Defendant. | Case No. 3:11-cv-01407-SI<br><br>**OPINION AND ORDER** |

Craig A. Crispin and Shelley D. Russell, Crispin Employment Lawyers, 1834 S.W. 58th Avenue, Suite 200, Portland, Oregon 97221. Attorneys for Plaintiff.

Michael Porter and Cody J. Elliot, Miller Nash LLP, 3400 U.S. Bancorp Tower, 111 S.W. Fifth Avenue, Portland, Oregon 97204. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Dr. Rosemary Siring ("Plaintiff" or "Siring") brings this lawsuit against Oregon State Board of Higher Education, acting by and through Eastern Oregon University ("Defendant" or "EOU"). The Court held a pretrial conference in this case on October 8, 2013, and issued its Opinion and Order on Pretrial Motions. Dkt. 109. The parties then submitted additional briefing

PAGE 1 – OPINION AND ORDER

on several issues, including: (1) whether the recent Supreme Court opinion in *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013), alters the causation standard for Dr. Siring's employment discrimination and retaliation claims, primarily her claims under the Americans with Disabilities Act ("ADA"), to the "but for" standard; (2) whether certain actions taken by EOU during Dr. Siring's terminal year are "adverse employment actions;" (3) whether evidence of Plaintiff's previous tenure process at Montana State University—Billings ("MSU-B") is admissible; and (4) whether Plaintiff's Ex. No. 78 should be excluded because it was not produced in discovery. This Opinion and Order addresses these issues.

## I. EMPLOYMENT DISCRIMINATION CAUSATION STANDARD

### A.  *University of Texas Southwestern Medical Center v. Nassar*

In the recently decided *Nassar* case, the Supreme Court clarified the standard for proving unlawful retaliation under Title VII of the Civil Rights Act. 133 S.Ct. 2517. At issue in *Nassar* was whether the "motivating factor" causation standard that applies to status-based discrimination claims under Title VII also applied to Title VII claims of retaliation. The Supreme Court held that it did not. *Id.* at 2532.  Justice Kennedy, writing for the majority, explained that the "motivating factor" causation standard applies only to status-based claims of discrimination under Title VII and that the correct causation standard for retaliation claims under Title VII is the "but for" standard. *Id.* at 2532-33. Justice Kennedy based his opinion on the structure, text, and legislative history of Title VII—noting that Congress recently had amended Title VII, overruling the Supreme Court's earlier, narrow interpretation of discrimination, and specifically adding the words "motivating factor" to the status-based discrimination clause of Title VII, while leaving unchanged the retaliation clause's "because of" causation standard. Justice Kennedy further concluded that the plain text meaning of "because of" is "but for." *Id.* at 2530-33. Therefore,

under Title VII retaliation, plaintiffs must prove that their protected activity was the "but for" cause of an adverse employment action.

**B.   *Nassar*'s Effect on Other Employment Discrimination Causes of Action**

While the *Nassar* holding changes the causation standard for Title VII retaliation claims, it is unclear whether it affects the causation standard for other employment discrimination causes of action with similar causation language as Title VII, such as claims under the ADA and the Oregon Disability Discrimination Statute, Or. Rev. Stat. 659A.030. This Opinion addresses each of Plaintiff's employment discrimination and retaliation causes of action, the statutory causation standard, and how these causes of action are affected, if at all, by the *Nassar* holding.

**1.   ADEA**

Plaintiff does not dispute that the correct causation standard for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") is the "but for" standard. *See Gross v. FBL Financial Services, Inc.*, 129 U.S. 167 (2009).

**2.   Oregon Employment Discrimination Under Or. Rev.  Stat. § 659A.030**

Oregon courts have consistently held that the causation standard for Oregon discrimination claims under Or. Rev. Stat. § 659A.030 is the "substantial factor" test. *See e.g.*, *Hardie v. Legacy Health* System, 6 P.3d 531 (Or. App. 2000). The Oregon Uniform Civil Jury Instructions provide: "A substantial factor is one that made a difference in an employment decision; that is, the decision would not have been made without it. It need not be the only factor." UCJI No. 59A.03. The Oregon Court of Appeals, however, has described this causation standard as a "but for" test. *See Hardie*, 6 P.3d at 537-38; *Estes v. Lewis and Clark College*, 954 P.2d 792, 796-97 (Or. App. 1998). This Court will follow Oregon Court of Appeals precedent and apply the "substantial factor" causation standard, which is defined as a "but for" standard.

PAGE 3 – OPINION AND ORDER

### 3.   Discrimination in Violation of the Rehabilitation Act

The Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, *solely by reason* of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under any program or activity receiving federal funding or assistance. 29 U.S.C. § 794(a) (emphasis added). Because of the word "solely," the Rehabilitation Act, unlike the ADA, has consistently been interpreted to require a "but for" standard of causation. *See e.g.*, *Head v. Glacier NW, Inc.*, 413 F.3d 1053, 1064-65. The parties do not dispute this requirement.

### 4.   Discrimination in Violation of the ADA

The ADA provides that "no covered entity shall discriminate against a qualified individual *on the basis of* disability." 42 U.S.C. §12112(a) (emphasis added). Previously, the ADA statute, unlike the Rehabilitation Act and the ADEA, has been interpreted to require only a "motivating factor" causation standard, rather than the more demanding "but for" standard. Under existing Ninth Circuit precedent, the causation standard for ADA discrimination claims is "motivating factor." *Head*, 413 F.3d at 1064-65. Defendant argues that the ADA's "on the basis of" language is substantially similar to the "because of" language in Title VII retaliation claims and therefore should be interpreted as requiring a "but for" causation standard after the Supreme Court's holding in *Nassar*. Plaintiff argues that the Ninth Circuit has not yet ruled that *Nassar* applies to the ADA and that several district courts within the Ninth Circuit have continued to apply the "motivating factor" test to ADA discrimination claims after the *Nassar* decision. *See e.g.*, *Thomas v. Donahoe*, No. 11-01670, 2013 WL 3286196 (N.D. Cal. June 27, 2013). Plaintiff further argues that the Supreme Court in *Nassar* specifically distinguished between status-based discrimination claims under Title VII and retaliation claims under Title VII, finding that the "motivating factor" test applied to status-based claims, while the "but for" test continued to

apply to retaliation claims. Because of this distinction, Plaintiff argues, status-based claims under the ADA should continue to be governed by the "motivating factor" test.

While "on the basis of" appears to be similar to Title VII's "because of," there are several reasons to believe that the *Nassar* holding may not apply to ADA discrimination claims.[1] First, like Title VII, the ADA was amended by Congress in 2008 with the specific purpose of broadening the scope of the act after the Supreme Court had interpreted it narrowly. ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a), 122 Stat. 3553. This amendment changed the causation language for ADA discrimination from "because of" to "on the basis of." *id.* at § 5(a), therefore, making the ADA discrimination claim less similar to a Title VII retaliation claim. Additionally, in the House Report on the ADA Amendments Act of 2008, a section is dedicated to explaining the new "on the basis of" language. H.R. Rep. 110-730(l) "Discrimination on the Basis of Disability" (2008). This section describes Congress's purpose for the changed language, particularly noting that "indirect evidence" and "mixed motive" cases should be permitted under the ADA discrimination causes of action. *Id.* The House Report also notes that Section 102 of the ADA is meant to "mirror the structure of nondiscrimination protection in Title VII of the Civil Rights Act." *Id.*

Examining the statutory text and legislative history, as the Supreme Court did in *Nassar*, the ADA discrimination provision is substantially more similar to Title VII's status-based discrimination provision than to Title VII's retaliation provision. Because of this, it is at least questionable whether *Nassar*'s "but for" causation standard should be extended to ADA discrimination claims. In the absence of a clear indication that *Nassar* applies to the ADA, this

---

[1] Lower courts have applied the *Nassar* holding to ADA *retaliation* claims, however, no ADA retaliation claim is at issue in the pending case. *See e.g.*, *E.E.O.C. v. Evergreen Alliance Golf Ltd.*, No. 11-0662, 2013 WL 4478870 (D. Ariz. Aug. 21, 2013).

Court will follow existing Ninth Circuit precedent. Therefore, as the Ninth Circuit held in *Head v. Glacier Northwest, Inc.*, the causation standard for ADA discrimination claims is "motivating factor." 413 F.3d 1053, 1064-65.

## II.  ADVERSE EMPLOYMENT ACTIONS

Plaintiff alleges that Dr. Siring was subjected to ten adverse employment actions in addition to being placed on a terminal contract: (1) EOU subjected Dr. Siring to hostile interrogation by Jaeger and Lauritzen, including questions about Plaintiff's retirement plans and health; (2) Lauritzen recommended to the CPC that Dr. Siring be terminated; (3) Jaeger began "documenting" the decision to terminate; (4) Jaeger terminated Dr. Siring by letter dated May 28, 2010, but not issued until June 8, 2010; (5) Dr. Siring's role in the 2010 graduation ceremony was removed; (6) Costi excluded Dr. Siring from participating in staff decisions regarding the senior class and excluding her from departmental communications; (7) Jaeger attempted to persuade Dr. Siring to work from home; (8) Costi excluded Dr. Siring from communications and input regarding senior students despite the fact that Dr. Siring was a Senior Cohort Leader; (9) Costi solicited opposition to an Siring's application for a position with Mount Hood Community College; and (10) Dr. Siring was notified on June 14, 2011 that her keys would be confiscated the next day, despite the fact that her employment was set to run through June 30, 2011 (this mistake was rectified when EOU realized its error). Plaintiff argues that several of these alleged acts—specifically, numbers one, four, five, six, seven, eight, and ten—are also relevant to emotional distress damages.

Defendant argues that, as a matter of law, none of these ten allegations constitute adverse employment actions. Defendant further argues that even if these acts did constitute adverse employment actions, Plaintiff waived any disability discrimination claims based on the alleged acts by excluding such claims from the Pretrial Order. Dkt. 53. Finally, Defendant argues that

PAGE 6 – OPINION AND ORDER

Plaintiff cannot recover emotional distress damages from the ten alleged actions because none of these acts arise from a discriminatory act.

An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment. *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000) (holding that giving plaintiff an unfavorable shift and denying vacation preference were not adverse employment actions). Workplace ostracism is not, by itself, an adverse employment action. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 803 (9th Cir. 2003). None of the ten alleged acts materially affected the compensation, terms, conditions, or privileges of Dr. Siring's employment, and therefore do not amount to adverse employment actions. *See Moran v. Selig*, 447 F.3d 748, 754 (9th Cir. 2006) (holding that for an act materially to affect the privileges of employment, it must be "part and parcel" with the employment relationship).

Evidence of the ten alleged actions are, however, potentially relevant to whether a discriminatory animus existed when Dr. Siring was placed on a terminal contract by EOU. Additionally, the acts are potentially relevant to the issue of the emotional distress that Dr. Siring suffered while on her terminal contract. Therefore, evidence of these acts, while not being evidence of independent additional adverse employment actions, is relevant and admissible.

### III.  TENURE PROCESS AT MSU-B

Plaintiff argues that evidence of Plaintiff's tenure process at Montana State University at Billings ("MSU-B") should be excluded as impermissible character evidence under Federal Rule of Evidence 404. Dkt. 106. Defendant responds that because Dr. Siring intends to testify that she had been granted tenure at MSU-B, evidence of the tenure process and the tenure committee's criticism of Dr. Siring's scholarship is relevant and presents a more complete story of Dr. Siring's past tenure position. Defendant also argues that the evidence of Dr. Siring's past tenure

process is relevant to show that Dr. Siring knew from her experience at MSU-B about the importance of scholarship in the tenure process.

Defendant's proposed evidence is not character evidence. In addition, if Plaintiff provides evidence that Dr. Siring was granted tenure at MSU-B before accepting employment with Defendant, then Plaintiff's evidence would be misleadingly incomplete without Defendant's additional evidence. Therefore, if Plaintiff chooses to present evidence that Dr. Siring was granted tenure at MSU-B, then the full context of that tenure decision is needed to show what she understood about the tenure process and the role of scholarship in the tenure process. In this context, evidence of Dr. Siring's past tenure process is not character evidence because it is not offered to prove conformity with a character trait, but instead, to show Dr. Siring's understanding of the tenure process. If, however, Plaintiff chooses not to present any evidence that Dr. Siring was granted tenure at MSU-B, then evidence of the tenure process at that institution is substantially less relevant and will be excluded.

### IV.  PLAINTIFF'S EXHIBIT NO. 78

Defendant argues that Plaintiff's Exhibit No. 78 should be excluded because it was not produced in discovery. Dkt. 122. Defendant argues that Exhibit No. 78, an article published by Dr. Siring in the Colorado Reading Journal after she left employment with EOU, was responsive to Defendant's Request for Production No. 3, which requests "all documents that relate to or reflect articles written or published by Dr. Siring during her employment at [EOU]." Dkt. 122. Dr. Siring's Colorado Reading Journal article was not completed or published at EOU; however, Dr. Siring did start work on the article while she was employed by EOU.

Although it is a close question whether Exhibit No. 78 should have been produced by Plaintiff in response to Defendant's Request for Production No. 3, there is some ambiguity in the wording of that request and there is no evidence that Plaintiff acted in bad faith by failing to

PAGE 8 – OPINION AND ORDER

produce the article or that Defendant was prejudiced by the failure of its production. Therefore,

Exhibit No. 78 will not be excluded and, upon proper foundation, will be received in evidence.

**CONCLUSION**

The Parties' motions *in limine* as discussed in their supplemental briefing are GRANTED

IN PART and DENIED IN PART as set forth in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 15th day of October, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge